## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMANDA ZICHERMAN | : | |
| 140 Livery Drive | : | |
| Churchville, Pennsylvania 18966 | : | |
| | : | Civil Action |
| Plaintiff | : | |
| v. | : | No. |
| | : | |
| UNIVERSITY OF DELAWARE | : | Jury Trial Demanded |
| 112 Hullihen Hall | : | |
| Newark, Delaware 19716; | : | |
| | : | |
| and | : | |
| | : | |
| BOB MULLEN, in his individual capacity | : | |
| 112 Hullihen Hall | : | |
| Newark, Delaware 19716; | : | |
| | : | |
| and | : | |
| | : | |
| NEIL WERNER, in his individual capacity, | : | |
| 112 Hullihen Hall | : | |
| Newark, Delaware 19716; | : | |
| | : | |
| and | : | |
| | : | |
| ELIZABETH REED, in her individual capacity, | : | |
| 112 Hullihen Hall | : | |
| Newark, Delaware 19716; | : | |
| | : | |
| and | : | |
| | : | |
| JOE KALINOWSKI, in his individual capacity | : | |
| 112 Hullihen Hall | : | |
| Newark, Delaware 19716 | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

## I.    INTRODUCTION

1.   On or about February 15, 2022, the Defendants were operating a vehicle which was involved in an accident. Inside the vehicle was the Plaintiff Amanda Zicherman, a woman with orthopedic disabilities, who often relied on a wheelchair for mobility as a student. Unfortunately, the Defendants failed to properly secure Plaintiff and her wheelchair in the vehicle, and when the vehicle stopped suddenly to avoid striking another vehicle, the Plaintiff's wheelchair became dislodged, resulting in the Plaintiff being thrown forward and hitting into the plexiglass separating drivers from passengers.

2.   As a result of the accident, the Plaintiff suffered severe injuries to her head, body, and limbs; more particularly she suffered segmental and somatic dysfunction of her lumbar, thoracic, and cervical regions; pain in left lower extremity, glute, and hip; left piriformis syndrome; sacroiliitis on the left side (inflammation and pain in the sacroiliac joint); lower left sciatic nerve lesion; lumbago with sciatica; spasms; disc herniation and annular tear; pain in her right knee; whiplash and cervical radiculopathy; lumbar radiculopathy; and sprain of her low back.

3.   But this was not the first time the Defendants failed to properly secure Amanda and her wheelchair; indeed, the Plaintiff had previously complained to the Defendants concerning their failure to properly secure her and her wheelchair.

4.   The Complaint asserts state tort claims against all defendants, as well as claims on behalf of the Plaintiffs for intentional discrimination under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. against the Defendant University of Delaware ("University"); and a claim under 42 U.S.C. § 1983 ("Section 1983") against all Defendants to enforce Plaintiff's rights under the ADA to be free from disability-based discrimination; and supplemental state law torts against all

Defendants.

## II.    PARTIES

5.   Plaintiff, Amanda Zicherman, is an adult individual residing at 140 Livery Drive, Churchville, Pennsylvania 18966.

6.   Plaintiff has physical impairments and disabilities that substantially limit her in major life activities, and thus she is entitled to the protections of Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act. 34 C.F.R. § 104.3(j).

7.   Defendant, University of Delaware, is a business entity which at all times material hereto regularly conducted business in the State of Delaware with a place of business located at 112 Hullihen Hall, Newark, DE 19716.

8.   Defendant, University of Delaware, is a recipient of federal financial assistance.

9.   Defendant, University of Delaware, is a "public entity" within the meaning of 42 U.S.C. § 12132 and is responsible for compliance with the guarantees of Title II of the Americans with Disabilities Act.

10. Defendant University is a state actor.

11. Defendant, Bob Mullen ("Mullen"), is an adult individual who at all times material hereto acted as an agent of Defendant University of Delaware, specifically as the Manager of Transportation Services.

12. Defendant, Neil Werner ("Werner"), is an adult individual who at all times material hereto acted as an agent of Defendant University of Delaware, specifically as the Director of Parking and Transportation.

13. Defendant, Elizabeth Reed ("Reed"), is an adult individual who at all times material hereto acted as an agent of Defendant University of Delaware, specifically as the Director and University

ADA & 504 Compliance Coordinator.

14. Defendant, Joe Kalinowski ("Kalinowski"), is an adult individual who at all times material hereto acted as an agent of, and Medical Transportation vehicle operator for, Defendant University of Delaware.

15. At all times material hereto, Defendant, University of Delaware, acted by and through its agents, servants, workmen, and/or employees acting on their master's business and within the scope and course of their employment, including, but not limited to Defendants Mullen, Werner, Reed, and Kalinowski.

16. At all times relevant to this Complaint, Defendants Mullen, Werner, Reed, and Kalinowski were employees and/or agents of Defendant University and were acting in their official and individual capacities under color of state law.

## III.    JURISDICTION AND VENUE

17. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it raises federal questions under Section 504, the ADA, and Section 1983. This Court has supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  The amount in controversy, exclusive of interest and costs, exceeds $75,000.

18. All the Defendants' actions complained of herein have taken place within the jurisdiction of the United States District Court for the District of Delaware. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## IV.    APPLICABLE FEDERAL LAW

### A.    Discrimination and Denial of Benefits under Section 504 of the Rehabilitation Act

19. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, "handicapped persons" in federally funded programs. Plaintiff is such a

4

"handicapped person" as she is a person with disabilities.

20. The statute provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

21. To state a claim under Section 504, a plaintiff must allege facts showing that: (1) she is an "individual with a disability" as defined under the statute; (2) she is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance"; and (4) she was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability." *Id.*

22. A "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. § 104.3.

23. Recovery is available under Section 504 where entities charged with the care of persons with disabilities (i.e., a "handicapped person") fail to properly provide or supervise that care, and physical injury results. *Enright v. Springfield Sch. Dist.*, 2007 WL 4570970 at *10-11 (E.D. Pa. Dec. 27, 2007) (affirming a jury verdict awarding monetary damages of $400,000 pursuant to Section 504 and ADA); *Susavage v. Bucks Cty. Intermediate Unit 22*, 2002 WL 109615 at *20 (E.D. Pa. Jan. 22, 2002) (allowing a damage claim pursuant to Section 504 where a public agency allowed the improper use of an inappropriate harness for an orthopedically impaired, special-needs child).

24. Where a plaintiff seeks compensatory damages for a Section 504 or ADA violation, the plaintiff must show that the conduct involved deliberate indifference. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

25. To plead deliberate indifference, the plaintiff must allege that the defendant had "knowledge that a federally protected right is substantially likely to be violated," and that the defendant "fail[ed] to act despite that knowledge." *S.H. ex rel Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). The failure to act in the face of the requisite knowledge requires "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." *Id.* at 263 (internal quotations omitted). The Defendants' actions and inactions in this matter fully satisfies this standard.

26. Notably, a plaintiff "need not establish that there has been an intent to discriminate in order to prevail under Section 504." *Beam v. Western Wayne School District*, 165 F. Supp. 3d 200, 211 (M.D. Pa. 2016) (*quoting Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991)). Rather, "[t]hey 'may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show bad faith or gross misjudgment.'" *Id.* (*quoting McKellar v. Commonwealth Dep't of Educ.*, 1999 WL 124381 at *5 (E.D. Pa. Feb. 23, 1999)). Consequently, liability under Section 504 can be established by showing either deliberate indifference or through facts which infer bad faith or gross misjudgment.

**B.      Discrimination under the ADA**

27. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff is such an individual with disabilities.

28. Section 12132 of the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of

federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).

29.  The ADA's causation standard is lower than Section 504 and does not require the disability to be the "sole cause" of the discrimination or denial of benefits; rather "the ADA only requires 'but-for' causation," i.e., but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285 (3d Cir. 2019).

> **C.**    **Pursuant to the Supreme Court's recent decision in *Talevski*, the Plaintiffs may bring a Section 1983 Claim to enforce the ADA.**

30. The Supreme Court's recent decision in *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 143 S.Ct. 1444 (2023) expands the use of Section 1983 and permits the Plaintiff to bring a Section 1983 claim to enforce the ADA against the Defendants.

31. "[A]ny person within the jurisdiction of the United States may invoke . . . [a Section 1983 claim] against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Talevski*, 599 U.S. at 175, 143 S. Ct. at 1452 (*citing* 42 U.S.C. § 1983).

32. "Section 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Id.* at 171 (*citing Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 253-55, 129 S. Ct. 788 (2009); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 122 S. Ct. 2268 n.4 (2002))

33. In *Talevski*, the Supreme Court strengthened Section 1983 by reminding state actors that "Section 1983 is, and was always regarded as, a tort claim" designed by Congress to permit individuals to enforce the laws of the United States to remedy "the regrettable reality that 'state instrumentalities' could not, or would not, fully protect federal rights." *Talevski*, 599 U.S. at 177, 143 S. Ct. at 1453.

34. In *Talevski*, the Supreme Court expanded upon its previous Section 1983 caselaw to remove barriers to a citizen's ability to raise a Section 1983 claim and to clarify that a Section 1983 claim can exist alongside a statute's private right of action: "The attendant presumption is that Section 1983 can play its textually prescribed role as a vehicle for enforcing [a statute's] . . . rights, even alongside a detailed enforcement regime that also protects those interests, so long as Section 1983 enforcement is not 'incompatible' with Congress' handiwork." *Id.* at 188-89 (*quoting City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120, 125 S. Ct. 1453, 1458 (2005)).

35. Under the *Talevski* framework, a Section 1983 action can be used to enforce the ADA against a state actor because: (1) Congress did not intend the ADA to be the "exclusive avenue" to enforce the rights of people with disabilities; (2) an action under the ADA is not "more restrictive" than a Section 1983 claim; (3) a Section 1983 claim is not "incompatible" with an ADA claim; and (4) a Section 1983 claim would not thwart an ADA claim. *Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

36. Furthermore, "[p]ublic Officials can be sued in either their individual or their official capacities, but the individual capacity suits 'seek to impose personal liability upon a government official for actions he [or she] takes under color of state law.'" *Miller v. Goggin*, ___ F. Supp. 3d ___, 2023 WL 3294832 at *7 (E.D. Pa. 2023) (*quoting Graham, supra*, 473 U.S. at 165); *Melo v. Hafer*, 912 F.2d 628, 637 (3d Cir. 1990), *aff'd*, 502 U.S. 21, 112 S. Ct. 358 (1991) ("individual capacity suits may be brought against government officials who acted under color of state law").

37. "In such a case, the plaintiff need only show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (*quoting Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 300 (M.D. Pa. 2015), *aff'd*, 905 F.3d 122 (3d Cir. 2018)) (quotation marks omitted).

38. "Personal involvement can be demonstrated through 'allegations of personal direction or

of actual knowledge and acquiescence.'" *Id.* (*quoting Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 569 (E.D. Pa. 2013)). The actions and inactions of the individual defendants in their individual capacities satisfies these standards as set forth by the above-cited cases.

## V.   STATEMENT OF THE FACTS

39. Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

40. Plaintiff required the use of a motorized wheelchair for most of her mobility needs as a University student due to her orthopedic disabilities which make her a beneficiary of the protections of Section 504 and the ADA.

41. Plaintiff began taking classes at the University beginning in the Fall of 2019.

42. Plaintiff experienced repeated significant problems with the University's Medical Transportation service during her time as a student at the University.

43. The University provides transportation services for students with disabilities ("Medical Transportation") through its Disability Support Services ("DSS") in connection with its Transportation Services and Public Safety. Medical Transportation provides students with door-to-door service, and DSS approved Plaintiff to use Medical Transportation.

44. The transportation vans used by Medical Transportation to transport the Plaintiff are equipped with lifts and tie-downs for wheelchairs, namely, four-point tie-downs.

45. The vans are also equipped with seat belts that drivers should be using to secure the students who ride on the vans.

46. As a passenger in these vans, the Defendants were required to secure the Plaintiff with a seatbelt and by using the four-point tie down securement system.

47. Despite being a four-point tie-down securement system, the Plaintiff was previously

secured in the van using only two or none of the four available tie-downs and was sometimes not buckled with a seatbelt.

48. In 2020, the Plaintiff complained to the Defendants that her transportation drivers were not using the proper techniques for securing her wheelchair, and that the drivers were not securing her with a seat belt.

49. In 2020 the Plaintiff emailed the Defendants University complaining of the transportation issues she was experiencing.

50. More specifically, the Plaintiff complained of the failure to properly secure her wheelchair by failing to properly use the four-point tie-down securement system.

51. On or about February 15, 2022, Defendant Joe Kalinowski operated and controlled the Medical Transportation vehicle/van which was involved in the accident with Plaintiff and was in the course and scope of his employment with Defendant, University of Delaware.

52. On the aforesaid date, Defendant University of Delaware owned the Medical Transportation vehicle being operated by Defendant Kalinowski and the vehicle was being operated with the knowledge, permission, and consent of Defendant University of Delaware.

53. On the aforesaid date, Plaintiff Amanda Zicherman was assisted into the Medical Transportation vehicle by Defendant Kalinowski, who failed to properly secure Plaintiff and her wheelchair in the vehicle, which also did not even have the correct securement system equipment.

54. On the aforesaid date, Plaintiff Amanda Zicherman was a passenger in the aforesaid Medical Transportation vehicle owned by Defendant University of Delaware and operated by Defendant Kalinowski, when suddenly and without warning, Defendant Kalinowski stopped to avoid striking the vehicle in front of him, causing Plaintiff's wheelchair to become dislodged, which resulted in Plaintiff being thrown forward and hitting the plexiglass separating drivers from

passengers.

55. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained poor performance in school; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

56. The accident resulted from the negligence, carelessness, gross/wanton negligence, recklessness, and/or deliberate indifference of the Defendants and was due in no matter whatsoever to any act or failure to act on the part of the Plaintiff.

57. On the aforesaid date, the Defendants:

    a.  Failed to use proper techniques for securing Plaintiff's wheelchair;

    b.  Failed to secure Plaintiff with a seat belt:

    c.  Failed to properly secure Plaintiff and her wheelchair in the transportation van;

    d.  Failed to safely operate the vehicle and securement system;

    e.  Failed to properly use and place the seatbelt restraints to ensure Plaintiff's safety as a wheelchair occupant;

    f.  Failed to supervise the conduct of University of Delaware Medical Transportation van drivers to ensure they had the requisite knowledge to properly secure Plaintiff and her wheelchair;

    g.  Failed to adopt and implement policies and procedures to properly secure Plaintiff and her wheelchair; and

    h.  Failed to monitor and report its drivers' inability to properly secure Plaintiff and

her wheelchair in University of Delaware Medical Transportation vans.

**VI.    COUNTS**

**COUNT I**

**NEGLIGENCE, RECKLESSNESS,  & GROSS/WANTON NEGLIGENCE**
**AMANDA ZICHERMAN vs. UNIVERSITY OF DELAWARE**

58. Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

59. At the time of Plaintiff's injuries as described herein, the Defendants knew that:

a.  Plaintiff used a wheelchair while being transported by the Defendants because of her disabilities;

b.  For her safety, Plaintiff and her wheelchair needed to be properly secured while the van was in motion;

c.  Plaintiff could not self-secure her herself or her wheelchair, and rather she and her wheelchair needed to be secured by one or more of the Defendants; and

d.  If Plaintiff's wheelchair was not secured while the van was in motion, then it was likely, foreseeable, and obvious that she would be injured.

60. Plaintiff believes and therefore avers that the Defendant University had a mandatory, nondiscretionary obligation to create, monitor and implement a comprehensive policy of safely securing persons with disabilities, such as Plaintiff and/or similarly situated vulnerable, disabled persons, to provide safe transportation to them, especially but not limited to times while vehicles were in motion, and yet this policy was ignored and/or unenforced by the Defendant University.

61. The Defendant University either failed to create such a policy, or created a mandatory, nondiscretionary policy to protect the safety of the Plaintiff while on University transportation using the four-point tie-down securement system, and such a policy was either never created or

was ignored, unmonitored, and/or unenforced by Defendant.

62. The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing Plaintiff and her wheelchair during transport.

63. The negligence, carelessness, gross negligence, and recklessness of Defendant, University of Delaware, consisted of the following:

a. Failed to properly train staff at University of Delaware; specifically, Medical Transportation van drivers;

b. Failed to hire staff at University of Delaware who were capable of properly securing wheelchair occupants like Plaintiff in their transportation vans;

c. Failed to use proper techniques for securing Plaintiff's wheelchair;

d. Failed to secure Plaintiff with a seat belt:

e. Failed to properly secure Plaintiff and her wheelchair in the transportation van;

f. Failed to safely operate the vehicle and securement system;

g. Failed to properly use and place the seatbelt restraints to ensure Plaintiff's safety as a wheelchair occupant;

h. Failed to supervise the conduct of University of Delaware Medical Transportation van drivers to ensure they had the requisite knowledge to properly secure Plaintiff and her wheelchair;

i. Failed to adopt and implement policies and procedures to properly secure Plaintiff and her wheelchair; and

j. Failed to monitor and report its drivers' inability to properly secure Plaintiff and

her wheelchair in University of Delaware Medical Transportation vans.

64. Plaintiff avers that Defendant, University of Delaware, as the employer of the driver of the Medical Transportation vehicle in question as well as the other named Defendants, is liable for all actions, inactions, negligence, carelessness, recklessness and gross/wanton negligence of their agents/servants more specifically set forth above.

65. Plaintiff believes and therefore avers that Defendants have insurance covered by a state insurance coverage program or self-insurance that would cover the theories of liability pleaded in this Complaint and/or the risk or loss at issue in this Complaint and is such as to preclude any claim of sovereign immunity in this action.

66. The injuries described in this Complaint are the result of the Defendants' negligent or grossly negligent acts or omissions in connection with its ownership, maintenance or use of a motor vehicle, special mobile equipment, or other machinery or equipment.

67. It is common sense that a person sitting in a wheelchair cannot safely ride in a motor vehicle unless the wheelchair is properly secured within said vehicle.

68. Thus, it was obvious that injury would result if the Defendants did not properly secure Plaintiff's wheelchair within the vehicle.

69. As a proximate result of University of Delaware's failures identified above, Plaintiff suffered severe injuries to her head, body, and limbs; more particularly she suffered segmental and somatic dysfunction of her lumbar, thoracic, and cervical regions; pain in left lower extremity, glute, and hip; left piriformis syndrome; sacroiliitis on the left side (inflammation and pain in the sacroiliac joint); lower left sciatic nerve lesion; lumbago with sciatica; spasms; disc herniation and annular tear; pain in her right knee; whiplash and cervical radiculopathy; lumbar radiculopathy; and sprain of her low back.

14

70. As a proximate result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained negative impacts on her school work and attendance; has sustained negative impacts on her employment; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

WHEREFORE, Plaintiff seeks judgment against Defendant University of Delaware for damages, interest, cost of suit, and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT II
## NEGLIGENCE, RECKLESSNESS,  & GROSS/WANTON NEGLIGENCE
## AMANDA ZICHERMAN vs. NEIL WERNER, ROBERT MULLEN, & ELIZABETH REED

71. Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

72. At the time of Plaintiff's injuries as described herein, the Defendants knew that:

a.  Plaintiff used a wheelchair while being transported by the Defendants because of her disabilities;

b.  For her safety, Plaintiff and her wheelchair needed to be properly secured while the van was in motion;

c.  Plaintiff could not self-secure herself or her wheelchair, and rather she and her wheelchair needed to be secured by one or more of the Defendants; and

    d. If Plaintiff's wheelchair was not secured while the van was in motion, then it was likely, foreseeable, and obvious that she would be injured.

73. Plaintiff believes and therefore avers that the Defendants Werner, Mullen, and Reed were subject to a mandatory, nondiscretionary policy of safely securing persons with disabilities, such as Plaintiff and/or similarly situated vulnerable, disabled persons, while vehicles were in motion, and yet this policy was ignored and/or unenforced by the Defendants.

74. Plaintiff believes and therefore avers that the Defendants Werner, Mullen, and Reed were subject to a mandatory, nondiscretionary policy to ensure the safety of the Plaintiff while on University transportation, and yet this policy was ignored and/or unenforced by Defendants.

75. The negligence, carelessness, and gross/wanton negligence of Defendants Neil Werner, Robert Mullen, and Elizabeth Reed consisted of the following:

    a. Failed to properly train staff at University of Delaware; specifically, Medical Transportation van drivers;

    b. Failed to hire staff at University of Delaware who were capable of properly securing wheelchair occupants like Plaintiff in their transportation vans;

    c. Failed to use proper techniques for securing Plaintiff's wheelchair;

    d. Failed to secure Plaintiff with a seat belt:

    e. Failed to properly secure Plaintiff and her wheelchair in the transportation van;

    f. Failed to safely operate the vehicle and securement system;

    g. Failed to properly use and place the seatbelt restraints to ensure Plaintiff's safety as a wheelchair occupant;

    h. Failed to supervise the conduct of University of Delaware transportation van drivers to ensure they had the requisite knowledge to properly secure Plaintiff and her

wheelchair;

    i.   Failed to adopt and implement policies and procedures to properly secure Plaintiff and her wheelchair; and

    j.   Failed to monitor and report their drivers' inability to properly secure Plaintiff and her wheelchair in University of Delaware Medical Transportation vans.

76. As a proximate result of Defendants' failures identified above, Plaintiff suffered severe injuries to her head, body, and limbs; more particularly she suffered segmental and somatic dysfunction of her lumbar, thoracic, and cervical regions; pain in left lower extremity, glute, and hip; left piriformis syndrome; sacroiliitis on the left side (inflammation and pain in the sacroiliac joint); lower left sciatic nerve lesion; lumbago with sciatica; spasms; disc herniation and annular tear; pain in her right knee; whiplash and cervical radiculopathy; lumbar radiculopathy; and sprain of her low back.

77. The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing her and her wheelchair during transport.

78. It is common sense that a person sitting in a wheelchair cannot safely ride in a motor vehicle unless the wheelchair is properly secured within said vehicle.

79. Thus, it was obvious that injury would result if the Defendants did not properly secure Plaintiff's wheelchair within the vehicle.

80. Plaintiff believes and therefore avers that Defendants have insurance covered by a state insurance coverage program or self-insurance that would cover the theories of liability pleaded in this Complaint and/or the risk or loss at issue in this Complaint and is such as to preclude any

claim of sovereign immunity in this action.

81. The injuries described in this Complaint are the result of the Defendants' negligent, careless, reckless, or grossly negligent acts or omissions in connection with its ownership, maintenance or use of a motor vehicle, special mobile equipment, or other machinery or equipment.

82. As a proximate result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained negative impacts on her school work and attendance; has sustained negative impacts on her employment; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

83. Plaintiff seeks punitive damages against Defendants Mullen, Werner, and Reed.

WHEREFORE, Plaintiff seeks judgment against Defendants Neil Werner, Robert Mullen, and Elizabeth Reed for damages, interest, cost of suit, and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT III
## NEGLIGENCE, RECKLESSNESS,  & GROSS/WANTON NEGLIGENCE
## <u>AMANDA ZICHERMAN vs. JOE KALINOWSKI</u>

84. Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

85. At the time of Plaintiff's injuries as described herein, the Defendant knew that:

   a.  Plaintiff used a wheelchair while being transported by the Defendants because of

her disabilities;

   b.  For her safety, Plaintiff and her wheelchair needed to be properly secured while the

van was in motion;

   c.  Plaintiff could not self-secure herself or her wheelchair, and rather she and her

wheelchair needed to be secured by one or more of the Defendants; and

   d.  If Plaintiff's wheelchair was not secured while the van was in motion, then it was

likely, foreseeable, and obvious that she would be injured.

86. Plaintiff believes and therefore avers that the Defendant Kalinowski was subject to a

mandatory, nondiscretionary policy of safely securing persons with disabilities, such as Plaintiff

and/or similarly situated vulnerable, disabled persons, while vehicles were in motion, and yet this

policy was ignored and/or unenforced by the Defendant.

87. Plaintiff believes and therefore avers that the Defendant Kalinowski was subject to a

mandatory, nondiscretionary policy to ensure the safety of the Plaintiff while on University

transportation, and yet this policy was ignored and/or unenforced by Defendant.

88. The negligence, carelessness, and gross/wanton negligence of Defendant Joe Kalinowski

consisted of the following:

   a.   Failed to use proper techniques for securing Plaintiff's wheelchair;

   b.   Failed to secure Plaintiff with a seat belt:

   c.   Failed to properly secure Plaintiff and her wheelchair in the transportation van;

   d.   Failed to safely operate the vehicle and securement system;

   e.   Failed to properly use and place the seatbelt restraints to ensure Plaintiff's safety as

       a wheelchair occupant;

   f.   Failed to have his Medical Transportation vehicle/van under the proper and

adequate control at the time of the accident;

g.  Operated his Medical Transportation vehicle/van at a high and excessive rate of speed under the circumstances;

h.  Failed to keep a proper lookout; and

i.  Failed to exercise due care and vigilance in the operation of his motor vehicle so as to avoid having to stop, causing Plaintiff's wheelchair to become dislodged and for Plaintiff to be thrown forward and hit the plexiglass separating drivers from the passengers.

89. As a proximate result of Defendant's failures identified above, Plaintiff suffered severe injuries to her head, body, and limbs; more particularly she suffered segmental and somatic dysfunction of her lumbar, thoracic, and cervical regions; pain in left lower extremity, glute, and hip; left piriformis syndrome; sacroiliitis on the left side (inflammation and pain in the sacroiliac joint); lower left sciatic nerve lesion; lumbago with sciatica; spasms; disc herniation and annular tear; pain in her right knee; whiplash and cervical radiculopathy; lumbar radiculopathy; and sprain of her low back.

90. It is common sense that a person sitting in a wheelchair cannot safely ride in a motor vehicle unless the wheelchair is properly secured within said vehicle.

91. Thus it was obvious that injury would result if the Defendants did not properly secure Plaintiff's wheelchair within the vehicle.

92. Plaintiff believes and therefore avers that Defendants have insurance covered by a state insurance coverage program or self-insurance that would cover the theories of liability pleaded in this Complaint and/or the risk or loss at issue in this Complaint and is such as to preclude any claim of sovereign immunity in this action.

93. The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing her and her wheelchair during transport.

94. The injuries described in this Complaint are the result of the Defendants' negligent or grossly negligent acts or omissions in connection with its ownership, maintenance or use of a motor vehicle, special mobile equipment, or other machinery or equipment.

95. As a proximate result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained negative impacts on her school work and attendance; has sustained negative impacts on her employment; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

96. Plaintiff seeks punitive damages against Defendant Kalinowski.

WHEREFORE, Plaintiff seeks judgment against Defendant Joe Kalinowski for damages, interest, cost of suit, and such other remedies as this Honorable Court deems equitable, just and proper.

**COUNT IV**
**DISCRIMINATION AND DENIAL OF BENEFITS UNDER SECTION 504**
**AMANDA ZICHERMAN vs. UNIVERSITY OF DELAWARE**

97. Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

98. At all relevant times, the Defendant University received federal financial assistance from several sources.

99. Plaintiff is a handicapped person, i.e., disabled, under Section 504.

100.    Despite her disabilities, at all times relevant to this Complaint, Plaintiff was otherwise qualified to attend Defendant's schools and programs with appropriate accommodations and supplemental supports for purposes of Section 504.

101.    At all times relevant to this Complaint, Defendants knew of Plaintiff's disabilities and associated needs as described in this Complaint.

102.    The Defendant discriminated against Plaintiff on the basis of her disability and denied her the equal benefits of her educational program, by failing to provide her with safe, appropriate, and properly supervised transportation where she would be free from harm, ultimately causing the serious injuries described herein.

103.    The Defendants had the duty and responsibility to ensure that Plaintiff's transportation was safe, appropriate, and properly supervised.

104.    Plaintiff would not have been subjected to the injuries described in this Complaint if she had not been disabled.

105.    The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing her and her wheelchair during transport.

106.    Plaintiff was deprived of the equal benefits of her educational program, and otherwise subject to discrimination, because of her disabilities.

107.    The Defendants acted with deliberate indifference and/or gross misjudgment and/or

violated Plaintiff's rights secured by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and 34 C.F.R. §§ 104.4 and 104.7.

108.     "The Third Circuit has held that the inadequacy of training may itself serve as the basis for liability where it amounts to 'deliberate indifference.'" *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615 at *7 (E.D. Pa. Jan. 22, 2002) (*citing Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

109.     "[T]o make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored [a] particular risk . . .), the plaintiffs must . . . show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious." *Id.* (*quoting Beers-Capital v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001) (internal quotation marks omitted)).

110.     As a direct and proximate result of Defendant's violations of Section 504 as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. She has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, medical/treatment bills, humiliation, and is entitled to monetary damages stemming from the injuries she has suffered due to Defendant's violations of Section 504.

111.     As a result of these violations, Plaintiff continues to suffer injuries and damages as described herein.

WHEREFORE, Plaintiff seeks judgment against Defendant University of Delaware for damages, interest, cost of suit, attorney's fees, and such other remedies as this Honorable Court

deems equitable, just and proper.

## COUNT V
## INTENTIONAL DISCRIMINATION UNDER THE ADA
## <u>AMANDA ZICHERMAN vs. UNIVERSITY OF DELAWARE</u>

112.     Plaintiff incorporates the averments of the preceding paragraphs as if each was set forth herein at length.

113.     The requirements for a claim under the ADA are similar to Section 504, except that under the ADA, a plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue and a lower standard of causation is applicable. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12132*; Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995); *Furgess v. Pa. Dept. of Corr.*, 933 F.3d 285 (3d Cir. 2019).

114.     As set forth above, Defendant University violated Section 504; thus, Defendant also violated the ADA.

115.     Plaintiff is a handicapped person, i.e., disabled, under the ADA.

116.     Despite her disabilities, at all times relevant to this Complaint, Plaintiff was otherwise qualified to attend Defendant's schools and programs with appropriate accommodations and supplemental supports for purposes of the ADA.

117.     At all times relevant to this Complaint, Defendants knew of Plaintiff's disabilities and associated needs as described in this Complaint.

118.     The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing her and her wheelchair during transport.

119.     The Defendant discriminated against Plaintiff on the basis of her disability and

denied her the equal benefits of her educational program, by failing to provide her with safe, appropriate, and properly supervised transportation where she would be free from harm, ultimately causing the terrible injuries described herein.

120.    The Defendants had the duty and responsibility to ensure that Plaintiff's transportation was safe, appropriate, and properly supervised.

121.    Plaintiff would not have been subjected to these injuries described in this Complaint if she had not been disabled.

122.    Plaintiff was deprived of the equal benefits of her educational program, and otherwise subject to discrimination, because of her disabilities.

123.    Defendant University violated Plaintiff's rights secured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. and 28 C.F.R. § 35.130, by its actions and inactions which: (a) subjected Plaintiff to discrimination, in violation of 28 C.F.R. § 35.130(a); and (b) limited Plaintiff in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

124.    The Defendants acted with deliberate indifference and/or gross misjudgment and/or violated Plaintiff's rights secured by the ADA.

125.    As a direct and proximate result of Defendant's violations of the ADA as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. She has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, medical/treatment bills, humiliation, and is entitled to monetary damages stemming from the injuries she has suffered due to Defendant's violations of the ADA.

126.     As a result of these violations, Plaintiff continues to suffer injuries and damages as described herein.

WHEREFORE, Plaintiff seeks judgment against Defendant University of Delaware for damages, interest, cost of suit, attorney's fees, and such other remedies as this Honorable Court deems equitable, just and proper.

**COUNT VI**
**42 U.S.C. § 1983 CLAIM FOR ENFORCEMENT OF THE ADA**
**(PLAINTIFF v. ALL DEFENDANTS)**

127.     Plaintiff incorporates by reference all paragraphs in this Complaint.

128.     All Defendants are either municipal entities or state actors subject to suit pursuant to 42 U.S.C. § 1983.

129.     At all times material here, Defendants acted under color of state law by and through their agents, ostensible agents, and/or employees.

130.     At all times relevant to this Complaint Defendants Mullen, Werner, Reed, and Kalinowski were employees and/or agents of the Defendant University and acting in their individual capacities under color of state law.

131.     A private citizen, including Plaintiff, can seek relief under Section 1983 to enforce the ADA because the ADA has no exhaustion requirement and does not have an "unusually elaborate," "carefully tailored," and "restrictive" enforcement scheme.

132.     The federal statutory rights prescribed by the ADA and violated by Defendants as set forth herein include the right to be free from discriminatory conduct.

133.     Defendants violated Plaintiff's rights secured by ADA, by its actions and inactions which (a) subjected Plaintiff to discrimination and denial of benefits, in violation of 28 C.F.R. § 35.130(a); (b) limited Plaintiff in the enjoyment of rights, privileges, advantages, or opportunities

enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

134.    The Defendants were on notice of the potential for Plaintiff's injury from Defendants' failure to properly secure Plaintiff and her wheelchair, as Plaintiff had previously complained to the Defendants that the Defendants were not properly securing her and her wheelchair during transport.

135.    The ADA conferred onto Plaintiff an equal right to a safe education free from discriminatory treatment and/or loss of educational benefits.

136.    The actions of the Defendants violated rights that the ADA guaranteed Plaintiff as a student with a disability.

137.    Defendants acted intentionally, with deliberate indifference, with gross misjudgment, or with bad faith, to the federally protected  rights of Plaintiff.

138.    As a direct result of the actions of Defendants as set forth herein, Plaintiff was caused to suffer the injuries and losses as described in this Complaint.

139.    Plaintiff seeks punitive damages against Defendants Mullen, Werner, Reed, and Kalinowski.

WHEREFORE, Plaintiff seeks judgment against Defendants for damages, interest, cost of suit, attorney's fees, and such other remedies as this Honorable Court deems equitable, just, and proper.

## VII.    RELIEF REQUEST

140.    Plaintiffs incorporate by reference all paragraphs in this Complaint.

141.    Plaintiffs respectfully requests that this Honorable Court:

a.    Assume jurisdiction over this action;

b.      Order appropriate monetary, compensatory, and punitive damages (where applicable), as requested in this Complaint;

c.      Order the Defendants to compensate Plaintiffs for their reasonable attorney's fees and related costs, including the costs of any expert witnesses; and

142.    Grant such other relief as this Court deems proper.

## VIII.   JURY DEMAND

143.    Plaintiffs incorporate by reference all paragraphs in this Complaint.

144.    Plaintiffs demand a jury of twelve persons on all claims herein stated.

Respectfully submitted,

/s/ *Caitlin E. McAndrews*
Caitlin E. McAndrews, Esq.
Delaware ID No. 6179
McANDREWS, MEHALICK,
CONNOLLY, HULSE AND RYAN, P.C.
900 Foulk Road, Suite 201
Wilmington, Delaware 19803
(302) 380-4975 (phone)
(302) 348-3779 (fax)
Attorney for Plaintiff