IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMANDA ZICHERMAN, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF DELAWARE, *et al.*, <br><br> Defendants. | Civil Action No. 24-00162-RGA |

MEMORANDUM OPINION

Caitlin Elizabeth Andrews, MCANDREWS LAW OFFICES, P.C., Wilmington, DE, Michael A. Cancelliere, Jr., NASS CANCELLIERE, Philadelphia, PA,

    Attorneys for Plaintiff.

Marisa R. De Feo, James Darlington Taylor, Jr., Juliana G. Clifton, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE,

    Attorneys for Defendants.

January 10, 2025

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' Motion to Dismiss (D.I. 15) Counts II–VI of Plaintiff's Complaint (D.I. 1). I have considered the parties' briefing. (D.I. 16, 18 (Defendants' briefs); D.I. 17 (Plaintiff's brief). For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND[1]

Amanda Zicherman is a wheelchair user who was a student at the University of Delaware from fall of 2019 to spring of 2022. (D.I. 1 at ¶¶ 40–57). The University provided Zicherman with transportation services through vans equipped with lifts and tie-downs for wheelchairs. (*Id.* at ¶¶ 43–45).

On February 15, 2022, Joe Kalinowski, an employee of the University and medical transportation vehicle operator (*id.* at ¶ 14), assisted Zicherman into a van. (*Id.* at ¶ 53). Zicherman alleges that Kalinowski "failed to properly secure [her] and her wheelchair in the vehicle," which itself was not equipped with the "correct securement system equipment." (*Id.*). Then, Zicherman alleges, Kalinowski suddenly stopped while driving to avoid striking another vehicle, "causing [Zicherman's] wheelchair to become dislodged, which resulted in [Zicherman's] being thrown forward and hitting the plexiglass separating drivers from passengers." (*Id.* at ¶ 54). As a result, Zicherman "suffered severe injuries to her head, body, and limbs" (*id.* at ¶ 69) in addition to "shock [and] emotional distress[.]" (*Id.* at ¶ 55). Zicherman filed a complaint against five parties: the University of Delaware; Bob Mullen, Manager of Transportation Services; Neil Werner, Director of Parking and Transportation; Elizabeth Reed, the University's ADA and 504 Compliance

---

[1] The Court has federal question jurisdiction. (D.I. 1 at ¶ 17). The Court states the factual allegations in the light most favorable to Plaintiff Zicherman.

Coordinator; and Kalinowski. (*Id.* at ¶¶ 10–16). The complaint has six counts: (i) negligence, recklessness, and gross/wanton negligence against the University of Delaware (*id.* at 12–15); (ii) the same against Werner, Mullen, and Reed (the "Supervisors") (*id.* at 15–18); (iii) the same against Kalinowski (*id.* at 18–21); (iv) discrimination and denial of benefits under Section 504 of the Rehabilitation Act against the University (*id.* at 21–24); (v) intentional discrimination under the Americans with Disabilities Act ("ADA") against the University (*id.* at 24–26); and (vi) 42 U.S.C. § 1983 for enforcement of the ADA against all defendants (*id.* at 26–27). Defendants have filed a motion to dismiss counts II–VI. (D.I. 15).

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III.  DISCUSSION

### A. Plaintiff Have Pled Improper Conduct of Defendants Werner, Mullen, and Reed.

Defendants contend that, since Zicherman has not alleged "any specific facts regarding Defendants Werner, Mullen, and Reed's supposedly improper and negligent conduct" (D.I. 16 at 5), Count II should be dismissed. Zicherman's complaint alleges in Count II that the Supervisors "[f]ailed to properly train staff at [the University,]" "[f]ailed to hire staff at [the University] who were capable of properly securing wheelchair occupants[,]" "[f]ailed to supervise the conduct of [University] transportation drivers," "[f]ailed to adopt and implement policies and procedures to properly secure Plaintiff in her wheelchair," and "[f]ailed to monitor and report their drivers' inability to properly secure Plaintiff and her wheelchair[.]" (D.I. 1 at ¶ 75(a), (b), (h)–(j)).

I disagree with Defendants that these allegations "fail[] to allege any specific facts[.]" (D.I. 16 at 5). The allegations in this section of the complaint are not particularly detailed, but Rule 8 does not require that they be. It is enough that they provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. Zicherman alleges deficiencies in the hiring and training process and a lack of monitoring and reporting of staff, each of which contributed to Kalinowski's failure to secure her wheelchair. The job titles of Defendants (*id.* at ¶¶ 11-13) suggests supervisorial responsibility, and Plaintiff states that she had previously made complaints to them about the same issues (*id.* at ¶ 77). These are not formulaic recitations of claim elements or legal conclusions couched as fact. "*Twombly* and *Iqbal* expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they

resembled a 'formulaic recitation of the elements of a . . . claim' or other legal conclusion." *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 681).

I will not dismiss Count II for failure to state a claim.

### B. The Complaint Contains Facts Sufficient to Overcome Qualified Immunity Under the DTCA at the Pleading Stage.

Defendants argue that Counts II and III must be dismissed because Zicherman has not pled facts sufficient to overcome qualified immunity for the individual defendants under the Delaware Tort Claims Act ("DTCA"). (D.I. 16 at 5–8); 10 Del. C. § 4001–6. Under the DTCA, public employees are immune from suit when their actions were (1) discretionary; (2) undertaken in "good faith and the belief that the public interest would best be served thereby;" and (3) undertaken without gross or wanton negligence. 10 Del. C. § 4001. The burden of proving the absence of any one element of immunity lies with the plaintiff. *Id.* I assume that means that the plaintiff has to plead the absence of at least one element. *See Gutierrez v. Advanced Student Transp., Inc.*, 2015 WL 4460342 (Del. Super. Ct. July 14, 2015).

Kalinowski's conduct as Zicherman's van driver was not discretionary; it was ministerial. "Discretionary acts are those which require some determination or implementation which allows a choice of methods, or, differently stated, those where there is no hard and fast rule as to a course of conduct." *In re COVID-Related Restrictions on Religious Servs.*, 2024 WL 3616269, at *14 (Del. Aug. 1, 2024). Ministerial acts, on the other hand, "are performed in a prescribed manner without requiring an official to exercise judgment regarding what should be done." *Id.* The allegations Zicherman brings against Kalinowski do not hinge on his exercise of judgment. (*See, e.g.*, D.I. 1 at ¶ 88(b) (failing to secure seatbelt), D.I. 1 at ¶ 88(c) (failing to operate van safely), D.I. 1 at ¶ 88(h) (failing to keep a proper lookout)). Therefore, Kalinowski cannot avail himself of the DTCA's immunity.

The bulk of the Supervisors' conduct is discretionary,[2] but Zicherman's pleading sufficiently alleges gross or wanton negligence to avoid qualified immunity at the pleading stage. Gross negligence requires that the Plaintiff show "an extreme departure from the ordinary care standard of care. A person acts wantonly when with no intent to cause harm, she performs an act so unreasonable and dangerous that the person knows or should have known that there is an eminent likelihood of harm which can result." *Bates v. Caesar Rodney Sch. Dist.*, 2018 WL 11360454, at *6 (Del. Super. Ct. Nov. 30, 2018) (quotations omitted), *aff'd*, 263 A.3d 127 (Del. 2021). Zicherman has stated a facially plausible claim that the Supervisors were aware of previous failures to secure her wheelchair but neglected to implement policies to address that issue. Zicherman's case presents an "eminent likelihood of harm" as well—as the complaint notes, "It is common sense that a person sitting in a wheelchair cannot safely ride in a motor vehicle unless the wheelchair is properly secured[.]" (D.I. 1 at ¶ 78). Consistent with the Third Circuit's warning that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases," *Newland v. Reehorst*, 328

---

[2] Zicherman alleges that the Supervisors "[f]ailed to adopt and implement policies and procedures to properly secure Plaintiff and her wheelchair." (D.I. 1 at ¶ 75(j)). Policymaking necessarily requires "some determination or implementation which allows a choice of methods." *Robinson v. Christiana Sch. Dist.*, 2022 WL 5060165, at *7 (Del. Super. Ct. Sept. 21, 2022). Decisions around who to hire or how to structure the hiring process are similarly judgment-dependent.
  Zicherman's argument that the Supervisors were "subject to a mandatory, nondiscretionary policy" of securing van passengers and ensuring their safety (D.I. 1 at ¶¶ 74–74; D.I. 17 at 6) does not persuade me that their conduct was ministerial. Even in the face of a duty to ensure safety, if determining how to abide by that duty requires a choice of methods, then that determination is discretionary. *See Wicks v. Delaware Veterans Home*, 2023 WL 5497040, at *5 (Del. Super. Ct. Aug. 24, 2023) (noting that defendants were under a duty to "maintain a safe environment" for patients but concluding that determining how to ensure safety necessarily required discretion).

F. App'x 788, 791 n.3 (3d Cir. 2009),[3] I decline to grant Defendants' motion on qualified immunity.

### C. Defendants' Exhaustion Argument Relies on a Settlement Agreement They Have Not Provided.

Defendants argue that Counts IV and V should be dismissed "because Plaintiff has not pled exhaustion." (D.I. 16 at 8). Defendants concede that the statutes on which the claims are based do not require that exhaustion be pled. (D.I. 18 at 4). That concession resolves this argument. Defendants' theory that Zicherman can be required to plead around an as-yet-unpled affirmative defense has no support in law. Plaintiffs do not have to negate affirmative defenses in their complaints.

To give Defendants their due, their theory is that Zicherman has to plead exhaustion because it is required by a settlement agreement into which the parties entered prior to Zicherman's injury "to resolve certain issues between the parties unrelated to the present action." (D.I. 16 at 3; D.I. 17 at 12). According to Defendants, the agreement requires Zicherman to exhaust the University's internal remedies before bringing suit for disability discrimination under the Americans with Disabilities Act or Section 504 of the Rehabilitation Act. (D.I. 16 at 3). Defendants provide the following excerpt, which directs Plaintiff to: "[U]se good faith efforts to use [the University's] administrative remedies prior to making any external complaint or claim of any type that [the University] (including its employees and agents) have engaged in disability discrimination in violation of the ADA, Section 504, . . . or other Accessibility Laws." (*Id.*) (alterations in original).

---

[3] The *Newland* court was discussing federal qualified immunity, not the DTCA. *See Newland*, 328 F. App'x at 791. The main reason for caution against premature qualified immunity analysis, however—the need to develop the factual record—remains in either setting.

Under Delaware law, contracts must be read as a whole, with each provision and term given effect. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). Here, however, neither party has provided a copy of the settlement agreement, or even an unaltered excerpt of the relevant provisions.[4] Under these circumstances, attempting to read the contract "as a whole" becomes an exercise in imagination. This difficulty is apparent in attempting to assess Zicherman's argument that the relevant language must be read "separate[ly] from other language and conditions in the Agreement[.]" (D.I. 17 at 12). I have no insight into what other language and conditions those may be, how they bear on the present dispute, or how they should color my interpretation of the exhaustion provision. The settlement agreement may preclude Zicherman's ADA and § 504 claims, or it may not. But until the issue is presented in a procedurally appropriate way, and I have a complete copy of the agreement, there is no reason to interpret a contract I cannot read. I will deny this portion of the motion.

### D. Section 1983 Cannot Be Used to Enforce the ADA.

Finally, Defendants argue that Count VI must be dismissed because, under Third Circuit precedent, 42 U.S.C. § 1983 may not be used to assert an ADA claim. (D.I. 16 at 10–11). I agree.

Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Section 1983 provides a method for vindicating federal rights, but Congress may foreclose a § 1983 remedy, "either by expressly forbidding recourse to § 1983 in the statute

---

[4] Zicherman explains that the parties have not provided the settlement agreement because of its "confidential nature." (D.I. 17 at 12 n.1).

8

itself, or by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. In determining whether a § 1983 action is disallowed, the crucial consideration is what Congress intended." *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 297–98 (3d Cir. 2017) (quotations and alterations omitted).

Zicherman brings a § 1983 claim against the University and the individual defendants. (D.I. 1 at ¶¶ 127–39). A state university is not a "person" for the purposes of § 1983 liability. *See McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 240 (3d Cir. 2010) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Count VI is dismissed with prejudice as it relates to the University. Count VI is dismissed with prejudice regarding the individual defendants because a § 1983 claim is incompatible with the ADA. In *Williams*, 870 F.3d at 299, the Third Circuit concluded: "Allowing pure . . . ADA claims under § 1983 would thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified." The Third Circuit continued, "[E]very circuit to consider this exact question has held that, while a plaintiff may use § 1983 'as a vehicle for vindicating rights independently conferred by the Constitution,' Title VII and ADA statutory rights cannot be vindicated through § 1983." *Id.* (collecting cases).

In response, Plaintiff argues that the Supreme Court's decisions in *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023) and *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023) overrule *Williams*. (D.I. 17 at 13–19).[5] I begin with *Talevski*. That case held that the Federal Nursing Home Reform Act ("FNHRA") did not "indicate[] incompatibility" with § 1983, distinguishing that statute from those at issue in three other Supreme

---

[5] Plaintiff does not specifically cite *Williams*, but references "[t]he cases cited by the defendants[.]" (D.I. 18 at 13).

9

Court cases that found implicit preclusion of § 1983—*Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), *Smith v. Robinson*, 468 U.S. 992 (1984), and *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1 (1981). The Court wrote:

> Each [statute at issue in those cases] required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies under the statute's enforcement scheme before suing under its dedicated right of action. And each statute-specific right of action offered fewer benefits than those available under § 1983. . . . Thus, in all three cases, § 1983's operation would have thwarted Congress's scheme coming and going: It would have circumvented the statutes' presuit procedures, and would have also given plaintiffs access to tangible benefits as remedies that were unavailable under the statutes. Those comprehensive enforcement schemes were incompatible with individual enforcement under § 1983.

*Talevski*, 599 U.S. at 189–90 (quotations and alterations omitted). Because the ADA has no exhaustion requirement or "suggested administrative process to adjudicate ADA claims[,]" Zicherman argues, § 1983 does not thwart the ADA and should survive under *Talevski*. (D.I. 17 at 14–16).

I do not find Plaintiff's argument persuasive. To explain why *Talevski* does not overrule *Williams*, it is first helpful to situate Zicherman's allegation within the provisions of the ADA. Title I of the ADA governs employment discrimination, *see* 42 U.S.C. § 12112, whereas Title II governs discrimination by public entities, *see* 42 U.S.C. § 12132.[6] For the purposes of a § 1983 analysis, it is important to note that Title I and Title II have different enforcement schemes. Title I draws its enforcement scheme from Title VII of the Civil Rights Act of 1964, *see Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999), 42 U.S.C. § 12117 (Title I's enforcement statute) (citing 42 U.S.C. § 2000e-5), whereas Title II incorporates the enforcement scheme of § 505 of the Rehabilitation Act, *see* 42 U.S.C. § 12133 (Title II's enforcement statute) (citing 29

---

[6] Title III concerns public accommodations and services operated by private entities. *See* 42 U.S.C. §§ 12182, 12184.

U.S.C. § 794a).[7] Zicherman brings her complaint under 28 C.F.R. § 35.130 (D.I. 1 at 26–27), a regulation which draws its authority from Title II.

*Williams*, on the other hand, concerned employment discrimination and Title I. *See Williams*, 870 F.3d at 298. The *Williams* court's conclusion that § 1983 was incompatible with the ADA was also motivated in large part by Title I's exhaustion requirement, *see id.*, which is absent from Title II.[8] Nevertheless, *Williams* affirmatively cited two cases that dealt explicitly with Title II, each of which found that § 1983 does not provide a cause of action for plaintiffs to sue officials in their individual capacities for deprivations of Title II rights. *See id.* at 300 n.33 (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) and *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc)). More importantly, *Williams*' language leads little room for interpretation: "ADA statutory rights cannot be vindicated through § 1983." *Williams*, 870 F.3d at 300. I do not believe the Third Circuit intended to limit its holding to Title I of the ADA.

---

[7] The Rehabilitation Act, for its part, incorporates different enforcement schemes depending on the nature of the claim alleged. For claims of employment discrimination, the Rehabilitation Act incorporates the "remedies, procedures, and rights set forth" in Title VII of the Civil Rights Act. *See* 29 U.S.C. § 794a(a)(1) (citing 42 U.S.C. § 2000e-16). For claims against recipients of federal assistance or federal providers of such assistance, the Rehabilitation Act incorporates the "remedies, procedures, and rights set forth" in Title VI of the Civil Rights Act. *See* 28 U.S.C. § 794a(a)(2) (citing 42 U.S.C. § 2000d *et seq.*).

[8] Defendants "do not argue Plaintiff was statutorily obligated to exhaust an administrative procedure[.]" (D.I. 18 at 8–9). It is well accepted that Title II does not contain an exhaustion requirement. *See Cook v. City of Philadelphia*, 94 F. Supp. 3d 640, 647 (E.D. Pa. 2015) (citing *Helen L. v. DiDario*, 46 F.3d 325, 329 (3d Cir. 1995)); *Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999); *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 824 (11th Cir. 1998).

Having provided the necessary statutory context and concluded that *Williams* is on point, I now reach the central question: whether *Talevski* overrules *Williams*. At the outset, I note that *Talevski* does not purport to change the § 1983 standard, nor does it rely on authority that was unavailable to the Third Circuit in *Williams*, nor does it pertain to the ADA. Furthermore, courts to have considered § 1983's application to the ADA post-*Talevski* have concluded that § 1983 remains unavailable for vindicating ADA rights. *See, e.g., Keeling v. Lake Cnty.*, 2024 WL 197210, at *6 (N.D. Ill. Jan. 18, 2024); *Spann v. N.M. Bd. of Bar Exam'rs*, 2023 WL 4132681, at *21 (D.N.M. June 22, 2023); *Smith v. Kalamazoo Pub. Sch.*, 703 F. Supp. 3d 822, 830 (W.D. Mich. 2023); *Puccinelli v. S. Conn. State Univ.*, 2023 WL 4838291, at *14 (D. Conn. July 28, 2023). To be sure, none of these cases explicitly considered *Talevski*'s potential impact on § 1983's relationship to the ADA—but given that *Talevski* did not purport to relate to the ADA in any way, that is not particularly surprising.

Applying *Talevski* supports these courts' conclusion: Section 1983 is incompatible with Title II of the ADA. Per *Talevski*, "giv[ing] plaintiffs access to tangible benefits as remedies that [are] unavailable under the statute[]" allows § 1983 to thwart a statute's enforcement scheme. *Talevski*, 599 U.S. at 189 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 254 (2009)). Here, Zicherman seeks to bring a § 1983 claim to enforce the ADA against both the individual defendants and the University. Title II's prohibition against discrimination reaches only public entities, not individuals. *See* 42 U.S.C. § 12132. Zicherman seeks to use § 1983 to expand the categories of permissible defendants under the ADA. That is a clear sign of incompatibility. *See, e.g., Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 448 (7th Cir. 2016) (holding that § 1983 cannot be used to "expand the categories of persons subject to suit"). *Talevski* does not overrule *Williams*.

Finally, Zicherman's resort to *Luna Perez* is misplaced. That case held that a student seeking compensatory damages against a school district under the ADA was not required first to exhaust administrative procedures under the Individuals with Disabilities Education Act. *Luna Perez*, 598 U.S. at 151 (2023). That case does not mention § 1983, much less involve a § 1983 claim seeking to enforce Title II of the ADA against individual defendants. It is not relevant to the question of whether Title II of the ADA is incompatible with a § 1983 claim.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. An appropriate order will follow.